DECISION
{¶ 1} Relator, Humility House, commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding permanent total disability ("PTD") compensation to respondent, Goldie Holland ("Holland").
 {¶ 2} Pursuant to Civ.R. 53(C), and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that there was "some evidence" to support the commission's determination that Holland was incapable of performing sustained, remunerative employment. She determined that though the evidence was susceptible to interpretation with respect to whether or not Holland was capable of sedentary or light work, the commission's interpretation was within its discretion.
 {¶ 3} The magistrate also found that because the evidence established that medical factors alone render Holland incapable of sustained, remunerative employment, the commission was not required to evaluate non-medical factors pursuant to State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Therefore, the magistrate recommended that the requested writ of mandamus be denied.
 {¶ 4} Relator filed objections to the magistrate's decision. Therein, relator argues that the magistrate erred in finding that the January 21, 2002 report of Holland's treating physician, Dr. Williams, constituted "some evidence" of Holland's physical inability to engage in sustained, remunerative employment. Relator argues that, because Dr. Williams had opined just three months earlier, in a report dated September 14, 2001, that Holland could return to work within the restrictions outlined by the occupational therapist, the January 2002 report should not have been relied upon and does not constitute "some evidence" supporting the commission's order. We disagree.
 {¶ 5} The January 2002 report contains both objective and subjective physical findings and an opinion that, medically, Holland is permanently and totally disabled. Therefore, it constitutes "some evidence" supporting the commission's order. That the same physician opined differently several months earlier goes only to the weight of the evidence. The commission ascribed sufficient weight to the January 2002 report to rely on it in ordering PTD compensation, and this was within its discretion. This objection is overruled.
 {¶ 6} Relator also argues that the magistrate erred when she concluded that the commission was not required to discuss non-medical factors pursuant to Stephenson, supra, and that the commission was correct in relying on the case of State ex rel. Galion Mfg. Div. Dresser Industries, Inc. v. Haygood (1991), 60 Ohio St.3d 38 in failing to do so. An evaluation of the non-medical/vocational factors is not necessary when the claimant is medically unable to perform any sustained, remunerative employment, even if this inability is occasioned by only one allowed condition. State ex rel. Speelman v. Indus. Comm. (1992),73 Ohio App.3d 757. Accordingly, this objection is overruled.
 {¶ 7} Finally, relator argues that the magistrate erred in not addressing relator's contention that Holland's advanced age was the sole cause of her inability to work. Finding nothing in the record to demonstrate that Holland's age was the sole cause or primary obstacle serving as a significant impediment to reemployment, we find no error in the magistrate's failure to specifically address this argument.
 {¶ 8} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we overrule relator's objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
LAZARUS and WATSON, JJ., concur.
 DECISION IN MANDAMUS {¶ 9} In this original action, relator, HM Health Services, known as Humility House, asks this court to issue a writ of mandamus compelling respondent Industrial Commission of Ohio ("commission") to vacate its order awarding compensation for permanent total disability ("PTD") to respondent Goldie Holland and to deny the requested compensation or, in the alternative, to give further consideration to the PTD application under State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167.
Findings of Fact:
 {¶ 10} 1. In March 2001, Goldie Holland ("claimant") was lifting a resident of Humility House from the floor when she sustained an injury to her back. Her workers' compensation claim was allowed for a compression fracture of the lumbar spine at L3. Claimant was 72 years old on the date of injury.
 {¶ 11} 2. In April 2001, K. Brian Williams, D.O., an orthopedic surgeon, reported as follows:
 {¶ 12} "There is apparently a question as to the relationship of Mrs. Holland's fracture and her work related activities. There is no history to suggest any other relation-ship and the activity of record is certainly consistent and is felt to be the cause of her compression fracture of L3 vertebral body."
 {¶ 13} 3. On September 6, 2001, claimant was evaluated in regard to her functional capacity at Keystone Rehabilitation Systems, at which time she felt that she could perform many of the tasks that she used to complete prior to her injury. The occupational therapist opined that claimant retained the capacity to carry ten pounds occasionally, sit frequently (although she had to change her position as pain in her low back began to increase), drive a car for transportation to appointments, etc., perform fine motor skills and fingering frequently, stoop/bend occasionally, and kneel one to two times per day. Claimant was able to perform a variety of limited lifting and reaching activities. The therapist made the following recommendations:
 {¶ 14} "Based upon the results of this evaluation, Mrs. Holland should work at a position in the Sedentary level of Physical Demands, (1 to 10# Occasionally, Negligible weight on a Frequent or Constant basis.) She did have greater strength in the lift that used her leg strength, being in the Light level when lifting 15 inches above floor level (11 to 20# Occasionally, but no Frequent lifts from this level.) She should be given the opportunity to change her postures every 30 minutes, as she can be on her feet or sit ~30 minute intervals, and then pain becomes intense if she does not change her posture. She is limited to 10 minute intervals of Standing stationary. She would benefit from keeping tasks within Near Reach (within 16" of her body) to minimize discomfort from reaching and allow her to use her hands on a Frequent basis. She could use Bend/Stoop or Rarely a 1/2 Kneel to perform low or floor level tasks."
 {¶ 15} The occupational therapist further opined that, if claimant could be taken back at a modified duty, lifting more than ten pounds occasionally and given the opportunity to sit occasionally, while also following all the other recommendations, claimant "may be able to participate in a Gradual Return to Work program, beginning at 4 hours per day and slowly increas[ing] to a full 8 hours per day as her tolerance improves."
 {¶ 16} 4. On September 14, 2001, claimant's orthopedist, Dr. Williams, released her to return to work within the restrictions outlined in the occupational evaluation.
 {¶ 17} 5. In December 2001, claimant visited Dr. Williams, reporting increased intensity of pain. On January 21, 2002, Dr. Williams reported, in part:
 {¶ 18} "* * * Mrs. Holland's injury of 3/23/01 is recalled lifting a resident from the floor at Humility House. * * * X-rays of 3/26/01, Medical Imagining Network, showed a compression fracture of the L3 vertebral body. Bone scan dated 4/9/01 showed increased activity of L3 vertebra, corresponding to compression deformity seen on plain films.
 {¶ 19} "The patient was subsequently referred to ABI Orthotics for placement of a back brace. A Freeman corset was fit 4/18/01. Patient was instructed to continue to wear this and was follow up on a serial basis with follow up X-rays of the lumbar spine to assess the status of the vertebral fracture. The brace alleviated some of the patient's discomfort, however, not all of it, which was even associated with simple activities of daily living.
 {¶ 20} "X-rays taken 5/21/01 showed improved density through the L3 vertebral body with appearance of a stable healing fracture. Brace was continued at that point as well. Therapy was initiated at that time at Rehab Network with slow progression related to the injury itself, patient's age and also symptoms. Therapy was progressed in light of the apparently healed fracture, though the patient continued to complain of low back pain and restrictions of activities including difficulty even sitting because of associated back pain.
 {¶ 21} "Functional capacity evaluation was recommended and obtained, report dated 9/6/01. Significant impairments were listed here as well as rather prohibited outline of recommendations for limitations.
 {¶ 22} "The latest follow up date was 12/12/01. The patient was hurting a lot in her low back subjectively at that time with actually an increased intensity. Clinically observed was a slow, careful gait, pain on palpation of the lumbosacral and sacroiliac areas, increased lumbar tone with some tenderness, and significant limitation of back mobility.
 {¶ 23} "Based upon this evaluation and all the information previously outlined, it is my feeling that Mrs. Holland is permanently and totally disabled due to allowed conditions which are felt to be directly related to the injury of record."
 {¶ 24} 6. In February 2002, claimant filed a PTD application stating among other things that she was born in May 1928 and finished eight years of school in West Virginia, leaving school in about 1945 to work to help support her family. She was certified as a nurse's aide in 1990.
 {¶ 25} 7. Additional medical and vocational reports were submitted.
 {¶ 26} 8. In September 2002, a hearing was held before a staff hearing officer ("SHO"), who found the January 2001 report of Dr. Williams to be persuasive. The SHO found that claimant was medically unable to perform any sustained remunerative employment, based solely on the industrial injury and allowed condition in the claim. Accordingly, the SHO did not proceed to an analysis of nonmedical factors:
 {¶ 27} "It is the finding of the Staff Hearing Officer that this claim has been allowed for: COMPRESSION FRACTURE L3.
 {¶ 28} "After full consideration of the issue it is the order of the Staff Hearing Officer that the Application filed 01/31/2002, for Permanent and Total Disability Compensation, is GRANTED TO THE FOLLOWING EXTENT.
 {¶ 29} "Permanent and total disability compensation is hereby awarded from 1/21/2002 * * *.
 {¶ 30} "This Staff Hearing Officer finds that it is not necessary to consider the claimant's disability factors since the claimant has reached maximum medical improvement and is medically unable to perform any sustained remunerative employment based upon the 1/21/2002 opinion by Dr. Williams, D.O., an orthopedic surgeon.
 {¶ 31} "This Hearing Officer relies upon the case of State ex rel. Galion Mfg. Div., Dresser Industries, Inc. v. Haygood (1991),60 Ohio St.3d 38, wherein the court stated as follows:
 {¶ 32} "[']A claimant who has multiple allowed conditions is not required to show that each condition standing alone, is work-prohibitive While permanent total disability benefits may never be denied solely on the basis of medical evidence without consideration of Stephenson factors contained in the record, there are some situations where an award of such benefits may properly be based on medical factors alone. It would serve no practical purpose for the commission to consider non-medical factors in extreme situations where medical factors alone preclude sustained remunerative employment, since non-medical factors will not render the claimant any more or less able to work.[']
 {¶ 33} "The payment of permanent and total disability benefits is to commence on 1/21/2002, based on the claimant's request that the permanent and total disability benefits commence on said date, and the opinion of Dr. Williams, cited above.
 {¶ 34} "It is further ordered that the above award be allocated as follows: 100% of the award is to be paid under Claim Number 01-832131.
 {¶ 35} "The allocation of this award is predicated upon the said opinion of Dr. Williams who attributes all of claimant's inability to work solely to the injury and allowed condition in this claim. Said opinion is found persuasive.
 {¶ 36} "All relevant evidence has been reviewed, and considered, in rendering this decision." (Emphasis sic.)
 {¶ 37} 9. The employer's request for reconsideration was denied.
Conclusions of Law:
 {¶ 38} The relevant inquiry in a PTD determination by the commission is whether the injured worker is capable of performing any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693, 695; State ex rel. Moss v. Indus. Comm. (1996), 75 Ohio St.3d 414. In mandamus, the issue before the court is whether the commission's order was supported by "some evidence" in the record and the commission provided an adequate explanation of its rationale. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203. An order supported by "some evidence" must be upheld regardless of whether the record includes other evidence, greater in quantity and/or quality, that supports the contrary decision. State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373, 376.
 {¶ 39} In cases where the injured worker retains a residual functional/medical capacity for work activities, the commission must consider not only the claimant's medical restrictions but must also consider nonmedical factors such as age, education and work history. Stephenson; State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. However, an exploration of the nonmedical/vocational factors is not necessary when the claimant is medically unable to perform any sustained remunerative employment. E.g., State ex rel. Galion Mfg. Div. Dresser Industries, Inc. v. Haygood (1991), 60 Ohio St.3d 38; State ex rel. Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757.
 {¶ 40} Here, the commission found that claimant was medically unable to perform any sustained remunerative employment due to the industrial injury, and the issue before this court is a narrow one — whether that finding was supported by "some evidence" in the record. The magistrate concludes that it was. The report on which the commission relied, the January 2001 report of Dr. Williams, constituted "some evidence" to support the commission's decision. Accordingly, a writ of mandamus is not warranted.
 {¶ 41} The employer argues the decision in Galion Mfg. cited by the commission was inapplicable. The magistrate disagrees, concluding that the principle for which the decision was cited has application beyond those situations in which the injured worker has multiple allowed conditions. Where a claimant is medically unable to perform sustained remunerative employment, an evaluation of the vocational ability is pointless, regardless of whether there is one allowed condition or ten. A consideration of the claimant's vocational factors is premised on the existence of a residual medical/functional capacity for sustained remunerative employment. See, generally, Stephenson; Speelman, supra; see, also, State ex rel. Corona v. Indus. Comm. (1998), 81 Ohio St.3d 587,589 (indicating that the nonmedical analysis depends on the claimant's functional capacity).
 {¶ 42} The employer also argues that all the evidence indicates that the claimant was and is capable of sedentary if not light work. Again, the magistrate disagrees. The evidence was susceptible to interpretation, and the commission's interpretation was within its discretion. It is true that, as of September 2001, Dr. Williams opined that claimant was able to perform limited work within the restrictions outlined by the occupational therapist. However, when Dr. Williams examined the claimant in December 2001, she reported that her pain was more intense. In his report of January 2002, Dr. Williams described claimant's slow, careful gait, and pain and tenderness on examination. He also found significant limitation of back mobility. Dr. Williams explained why he believed at that time that claimant was unable to work.
 {¶ 43} Dr. Williams' opinion of January 2002 does not show a contradiction of his September 2001 opinion but simply a revision of his opinion based on a change in the patient's presentation during a subsequent examination. Although reasonable persons could disagree with Dr. Williams as to whether the patient's increased symptoms were sufficient to remove her from the workforce, his medical opinion was "some evidence" on which the commission could choose to rely. The magistrate finds no basis for removing the report from evidentiary consideration as a matter of law. Dr. Williams focused solely on the industrial injury and the allowed fracture at L3; there is no mention of any other condition causing disability. The doctor's general reference to "allowed conditions" in the last sentence does not outweigh his clear focus throughout the report on a single injurious event and a single condition of fractured vertebra at L3. In sum, the commission as the finder of fact was within its discretion to accept Dr. Williams' opinion in awarding PTD compensation.
 {¶ 44} The employer has not met its burden of proving an abuse of discretion by the commission. Accordingly, the magistrate recommends that the court deny the requested writ.